Porter W. SWEDE, Plaintiff–Appellee,

v.

ROCHESTER CARPENTERS PENSION FUND and Christina Lucci, as Administrative Manager, Defendants–Appellants.

Docket No. 06–0112–CV.

United States Court of Appeals, Second Circuit.

Argued: Oct. 5, 2006.

Decided: Oct. 20, 2006.

Michael T. Harren, Chamberlain D'Amanda Oppenheimer & Greenfield LLP, Rochester, NY, for Appellants.

Peter C. Nelson, Rochester, NY, for Appellee.

Before FEINBERG, CABRANES, and SACK, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

The Rochester Carpenters Pension Fund ("Fund") and Christina Lucci, the Fund's administrative manager (collectively, "defendants"), appeal from a judgment in favor of plaintiff Porter Swede ("Swede") entered by the United States District Court for the Western District of New York (Michael A. Telesca, *Judge*). The District Court granted Swede partial summary judgment on his claim under the Employee Retirement Income Security Act of 1974 ("ERISA") that he was entitled to retroactive retirement benefits that had been wrongfully suspended pursuant

to a 2000 amendment to the Fund's plan of benefits.

We affirm.

## BACKGROUND

The facts on appeal are uncontested by the parties. Swede worked for almost thirty years in employment covered by the Fund. Having earned a pension through the Fund, he took early retirement in 1998 and soon thereafter began work as an office engineer in the construction industry. At the time of Swede's retirement, the Fund did not restrict retirees from taking supervisory positions within the construction industry while receiving benefits. In 2000, the Fund amended its plan to broaden its definition of disqualifying employment. On March 29, 2000, the Fund informed Swede that his benefits were being suspended pursuant to this plan amendment.

The Fund restored Swede's benefits as of November 2004 after the Supreme Court, in *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 124 S.Ct. 2230, 159 L.Ed.2d 46 (2004), found that plan amendments of the type adopted by the Fund and applied against Swede violate ERISA's "anti-cutback" rule, ERISA § 204(g), 29 U.S.C. § 1054(g).[1] *See Heinz*, 541 U.S. at 741, 124 S.Ct. 2230. Swede filed suit on November 30, 2004, seeking retroactive retirement benefits for the period during which his benefits had been suspended. He also sought statutory damages under 29 U.S.C. § 1132(c)(1) for Lucci's alleged failure to provide him with certain documents that he had requested from the Fund.[2] Swede subsequently moved for partial summary judgment on his claim for retroactive retirement benefits. Defendants argued in opposition to Swede's motion that *Heinz* did not require the Fund to retroactively restore Swede's benefits for any periods prior to the Supreme Court's decision, particularly in light of an IRS Revenue Procedure allegedly limiting *Heinz's* retroactive effect. *See* Rev. Proc.2005–23, 2005–1 C.B. 991 § 1.01 ("The purpose of this revenue procedure is to limit the retroactive application of the decision in [*Heinz*] ...."), *modified by* Rev. Proc.2005–76, 2005–50 I.R.B. 1139. The Fund did, however, adopt a reforming amendment that restored Swede's entitlement to benefits, with interest, retroactive to June 1, 2004— one week before the Supreme Court issued its decision in *Heinz*.[3]

On December 15, 2005, the District Court granted Swede's motion for partial summary judgment. Without explicitly referring to Rev. Proc.2005–23, the District Court concluded that defendants' retroactivity argument was a "red herring." *Swede v. Rochester Carpenters Pension Fund,* No. 04–CV–6591T, slip op. at 2 (W.D.N.Y. Dec. 15, 2005). The District Court found that the *Heinz* decision did not issue a new rule of law; it "merely clarified that the type of modification attempted here by the defendants violates

---

**1.** Section 204(g) provides, in relevant part: "The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan...." 29 U.S.C. § 1054(g)(1). The anti-cutback rule applies to early retirement benefits of the type accrued by Swede. *See* 29 U.S.C. § 1054(g)(2); *Heinz,* 541 U.S. at 744, 124 S.Ct. 2230.

**2.** 29 U.S.C. § 1132(c)(1) states that a plan administrator who fails to supply certain documents requested by a plan participant or beneficiary within thirty days of the request may "be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure." 29 U.S.C. § 1132(c)(1). *See* Compl. ¶¶ 19–28 (third and fourth causes of action).

**3.** *Heinz* was decided on June 7, 2004. *See Heinz,* 541 U.S. at 739, 124 S.Ct. 2230.

ERISA [§ 204(g) ]." *Id.* On this basis, the District Court found that the 2000 plan amendment that resulted in suspension of Swede's benefits was as improper in 2000 as it was in 2004 when *Heinz* was decided, and that Swede consequently was entitled to full retroactive benefits. *Id.*, slip op. at 3.

Pursuant to its partial summary judgment ruling, the District Court entered judgment on December 29, 2005 directing "that plaintiff receive all benefits to which he was entitled, with appropriate interest for the period from March 2000 to November 2004." *Swede v. Rochester Carpenters Pension Fund*, No. 04–CV–6591T (W.D.N.Y. Dec. 29, 2005) (judgment).[4] Defendants filed a notice of appeal on January 3, 2006. The District Court subsequently entered two additional judgments in the action, one on April 12, 2006 resolving Swede's claims for statutory damages under 29 U.S.C. § 1132(c)(1), and one filed on May 15, 2006 ordering the Fund to pay Swede $48,401 pursuant to the December 15, 2005 partial summary judgment ruling. The District Court also ordered the case closed.[5] Defendants did not file any additional notices of appeal after these judgments were entered.

## Discussion

### A. Appellate Jurisdiction

 Although none of the parties has raised the issue, we are obliged to consider whether we have jurisdiction to hear this appeal. *See Goldberg v. Cablevision Sys. Corp.*, 261 F.3d 318, 323 (2d Cir.2001). As a general rule, we lack jurisdiction to hear an appeal "unless the decision is, or is embodied in, an order or judgment that is 'final' within the meaning of 28 U.S.C. § 1291."[6] *Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 171 (2d Cir.2002) (quoting *Citizens Accord v. Town of Rochester*, 235 F.3d 126, 128 (2d Cir. 2000)). Because defendants appealed before the disposition of all of plaintiff's claims, we briefly address whether appellate jurisdiction exists. After granting Swede's motion for partial summary judgment on December 15, 2005, the District Court entered judgment pursuant to that ruling on December 29, 2005, even though Swede's claims for statutory damages under 29 U.S.C. § 1132(c)(1) remained pending and the Court had not yet determined exactly how much money Swede was entitled to recover on his claim for retroactive benefits. The partial judgment entered by the District Court, which did not contain an "express determination that there [was] no just reason for delay" as required by Fed.R.Civ.P. 54(b), was not properly certified for appeal. *See Smith*, 298 F.3d at 171 (explaining requirement that partial judgment contain a reasoned explanation for the determination that there was no reason to delay entry of judgment).

 Nevertheless, the District Court's subsequent closure of the case and entry of judgment on Swede's remaining claims rendered the decision being appealed from "final" for purposes of 28 U.S.C. § 1291. *See Vona v. County of Niagara*, 119 F.3d 201, 206 (2d Cir.1997) (concluding that

---

**4.** The District Court apparently did not note that the Fund, by plan amendment, had already agreed to pay Swede retroactive benefits from June through November 2004.

**5.** The docket report for the case indicates that the District Court ordered the case closed on December 15, 2005, but that proceedings con-

tinued in the case until the May 15, 2006 judgment was entered.

**6.** 28 U.S.C. § 1291 states, in relevant part, that "[t]he courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291 (2004).

"there was a final judgment ... for purposes of appealability under 28 U.S.C. § 1291, because the case was marked 'closed,' presumably on order of the district court.... Even though a document does not comprehensively list all of the court's decisions, we may consider it to be a final judgment if it is clear that the court so intended it."). We conclude that the judgment became final by May 15, 2006, because all of Swede's claims were resolved once the District Court entered a third (and last) judgment on that date and because the District Court had already ordered the case closed by that date. *Cf. Brown Shoe Co. v. United States*, 370 U.S. 294, 306, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962) ("A pragmatic approach to the question of finality has been considered essential to the achievement of the 'just, speedy, and inexpensive determination of every action': the touchstones of federal procedure." (quoting Fed.R.Civ.P. 1)).

■ The existence of a final judgment in the case has also cured defects in defendants' notice of appeal. While defendants' notice of appeal "was filed before the judgment became final and was therefore premature," a premature notice of appeal "may ripen into a valid notice of appeal if a final judgment has been entered by the time the appeal is heard and the appellee suffers no prejudice." *Smith*, 298 F.3d at 172 (quoting *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054–55 (2d Cir.1993)). Because we see no prejudice to Swede in the instant case, our exercise of appellate jurisdiction is appropriate.

## B. Merits of Appeal

Turning to the merits, we review the District Court's grant of partial summary judgment *de novo. See Goldman v. Cohen*, 445 F.3d 152, 155 (2d Cir.2006). We conclude on the basis of this review that the District Court correctly determined that Swede is entitled to retroactive retirement benefits.

■ When the Supreme Court held in *Heinz* that plan amendments of the type used to deprive Swede of benefits violate ERISA's anti-cutback rule, all courts were required to apply that rule to the cases before them, regardless of whether the events at issue predated *Heinz. See Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect ... as to all events, regardless of whether such events predate or postdate our announcement of the rule."); *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995) (reiterating rule in *Harper* that all courts must apply rules of law articulated by the Supreme Court "to all pending cases, whether or not those cases involve predecision events"); *cf. Margo v. Weiss*, 213 F.3d 55, 60 (2d Cir.2000) (rejecting argument that rule adopted by Court of Appeals should not apply to facts predating announcement of the rule). As the Supreme Court observed in *Harper*, this approach "heeds the admonition that '[t]he Court has no more constitutional authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently.'" *Harper*, 509 U.S. at 97, 113 S.Ct. 2510 (quoting *American Trucking Ass'ns, Inc. v. Smith*, 496 U.S. 167, 214, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (Stevens, J., dissenting)) (alteration in original). Consequently, the District Court in the instant case properly held that the Fund's suspension of Swede's benefits in 2000 violated ERISA's anti-cutback rule, as interpreted by the Supreme Court in *Heinz*.

■ Rev. Proc.2005–23 does not change this analysis.[7] As *Heinz* explained, the Internal Revenue Code ("IRC") effectively conditions the tax-exempt status of pension plans on compliance with many of the substantive provisions of ERISA, including ERISA's anti-cutback rule. *See Heinz*, 541 U.S. at 746–47 & n. 3, 124 S.Ct. 2230 (explaining that the anti-cutback rule of ERISA § 204(g) shows up in substantially identical form as 26 U.S.C. § 411(d)(6), which regulates the tax-exempt status of pension plans).[8] In *Heinz*, the Supreme Court found that the "most authoritative voice" of the IRS supported the Court's holding, *see Heinz*, 541 U.S. at 747–48, 124 S.Ct. 2230 (analyzing 26 C.F.R. § 1.411(d)–4), but observed that many plans had adopted improper amendments in reliance on contrary positions taken by the IRS's Internal Revenue Manual and longstanding agency practice, *see id.* at 748, 124 S.Ct. 2230. The Court therefore suggested that the IRS limit the retroactive effect of its ruling in order to avoid "revisit[ing] the tax-exempt status in past years of plans that were amended in reliance on the agency's representations in its manual by expanding the categories of work that would trigger suspension of benefit payments as to already-accrued benefits." *Id.* at 748 n. 4, 124 S.Ct. 2230. The Court cited 26 U.S.C. § 7805(b)(8), which permits the IRS to "prescribe the extent, if any, to which any ruling (including any judicial decision ...) relating to the internal reve-

nue laws shall be applied without retroactive effect," as the source of the IRS's power to avoid revisiting plans' tax-exempt status. *See Heinz*, 541 U.S. at 748 n. 4, 124 S.Ct. 2230.

Rev. Proc.2005–23 does nothing more than implement the Supreme Court's suggestion in note 4 of *Heinz*. It formally states that the tax-exempt status of plans would not be jeopardized solely by virtue of pre-*Heinz* plan amendments of the type that *Heinz* found violated ERISA. *See* Rev. Proc.2005–23 § 1.02 ("With regard to qualified retirement plans that adopted certain amendments before June 7, 2004, [the date on which *Heinz* was decided,] ... the Service will not disqualify a plan solely on account of a plan amendment adding or expanding a suspension of benefit provision, as prohibited under *Central Laborers' [Pension Fund v. Heinz]*."). The Revenue Procedure emphasizes that it does not affect the substantive rights of parties under ERISA's anti-cutback rule. *See id.* ("The limitation on the retroactive application of *Central Laborers'* under this revenue procedure has no effect on the rights of any party under section 204(g) of the Employee Retirement Income Security Act of 1974 (ERISA) or any other law."). Subsequent regulatory guidance from the Treasury Department and the IRS confirms that Rev. Proc.2005–23 does not affect the substantive rights of parties under ERISA.[9] *See* Section 411(d)(6) Protected

---

7. According to the IRS, "[a] Revenue Procedure is a statement of procedure that affects the rights or duties of taxpayers or other members of the public under the [Internal Revenue] Code and related statutes or information that, although not necessarily affecting the rights and duties of the public, should be a matter of public knowledge." 26 C.F.R. § 601.601(d)(2)(i)(b) (2006). *Cf. Estate of Shapiro v. Commissioner*, 111 F.3d 1010, 1017–18 (2d Cir.1997) (discussing significance of Revenue Procedures).

8. 26 U.S.C. § 411(d)(6)(A) states, in relevant part: "A plan shall be treated as not satisfying the requirements of this section if the accrued benefit of a participant is decreased by an amendment of the plan...." 26 U.S.C. § 411(d)(6)(B) clarifies that the anti-cutback rule applies to early retirement benefits. *See Heinz*, 541 U.S. at 746 n. 3, 124 S.Ct. 2230.

9. Consequently, we have no occasion to consider whether *Harper's* retroactivity rule or other legal principles might constrain the IRS's authority to limit the retroactive effect

Benefits, 70 Fed.Reg. 47,155, 47,156 (proposed Aug. 12, 2005) (to be codified at 26 C.F.R. pt. 1) (noting in background section of proposed regulations implementing *Heinz* that "Rev. Proc.2005–23 does not address participants' rights to recover benefits under Title I of ERISA"), *corrected by* 70 Fed.Reg. 53,973 (Sept. 13, 2005).[10] While new regulations implementing *Heinz* were promulgated effective August 9, 2006, *see* Section 411(d)(6) Protected Benefits, 71 Fed.Reg. 45,379 (Aug. 9, 2006) (codified at 26 C.F.R. pt. 1), *corrected by* 71 Fed.Reg. 55,108 (Sept. 21, 2006), defendants have provided no evidence that the new regulations would affect the outcome of this case.[11]

■■ The Fund attempts to avoid the effect of *Heinz* by contending that its trustees would violate their fiduciary duties if we ordered them to pay Swede retroactive benefits not authorized by the Fund's reforming amendment, which was adopted in conformity with Rev. Proc.2005–23.[12] But we have previously rejected ERISA plans' arguments that compliance with judicial rulings could give rise to breach of fiduciary claims. *See Am. Telephone & Telegraph Co. v. Merry*, 592 F.2d 118, 125 (2d Cir.1979) (rejecting ERISA plan's argument that compliance with a court order would "subject them to claims of breach of fiduciary duty under ERISA" and noting that "fiduciary conduct is subject to judicial guidance … [. A] fiduciary acting pursuant to a court's instructions is protected from assertions of breach of duty."). *Franklin v. Thornton*, 983 F.2d 939 (9th Cir.1993), which the Fund cites in support of this argument, merely states the unsurprising proposition that a trustee who unilaterally violates requirements under ERISA and the plan itself also violates his fiduciary duties towards the plan. *See id.* at 940–41. Moreover, nothing in Rev. Proc.2005–23 restricts the Fund's ability to adopt a reforming amendment explicitly granting beneficiaries of the pension plan the retroactive benefits Swede now seeks through litigation; the Revenue Procedure explicitly permits plans to adopt more generous reforming amendments than the minimum required to retain tax-exempt status. *See* Rev. Proc.2005–23 § 3.02(2) (stating that "[t]he reforming amendment is permitted to provide greater benefits to participants than the minimum required"

on the rights of parties of judicial decisions "relating to the internal revenue laws." 26 U.S.C. § 7805(b)(8).

10. *Heinz* explains that "Title I of ERISA was enacted to impose substantive legal requirements on employee pension plans (including the anti-cutback rule), [while] Title II of ERISA amended the Internal Revenue Code to condition the eligibility of pension plans for preferential tax treatment on compliance with many of the Title I requirements." *Heinz*, 541 U.S. at 746, 124 S.Ct. 2230.

11. We note that the new regulations apply to ERISA § 204(g) as well as the IRC's version of the anti-cutback rule, 26 U.S.C. § 411(d)(6). *See* Section 411(d)(6) Protected Benefits, 71 Fed.Reg. at 45,380 ("[T]hese final regulations issued under section 411(d)(6) of the Code also apply for purposes of section 204(g) of ERISA."). Defendants have not,

however, attempted to argue that the plan amendment under which Swede's benefits were suspended would have been permissible under the new regulations—much less that the new regulations retroactively validate the plan amendment.

12. Rev. Proc.2005–23 conditions the continued tax exemption of pension plans on adoption of reforming amendments that, with certain qualifications, invalidate as of June 7, 2004 (the date on which *Heinz* was decided) plan amendments that had suspended benefits in violation of the holding of *Heinz*. *See* Rev. Proc.2005–23 §§ 3.01–3.02. The Fund complied with this requirement by adopting a reforming amendment on May 15, 2005 that invalidated the prior plan amendment as of June 1, 2004.

for the plan to retain its tax exemption).[13]

### CONCLUSION

Because *Heinz* applies retroactively, and because Rev. Proc.2005–23 does not limit Swede's rights to pursue ERISA claims against the Fund, we AFFIRM the judgment of the District Court.

---

13. We do not address here whether ERISA's fiduciary duty statute, ERISA § 404, 29 U.S.C. § 1104, might require the Fund to adopt reforming amendments restoring all benefits to which beneficiaries may be entitled after *Heinz*, as this argument was not briefed by the parties and did not serve as a basis for Swede's claim for retroactive benefits.